United States District Court
Eastern District of Michigan
Southern Division

United States of America,

        Plaintiff,

                                  Case No. 24-20274

v.

                                  Hon. Denise Page Hood

Jibreel Pratt,

        Defendant.

_____/

## Plea Agreement

The United States of America and the defendant, Jibreel Pratt, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

## 1. Count of Conviction

The defendant will waive his right to an indictment and will plead guilty to Count 1 and Count 2 of the Information. Count One and Count Two each charge the defendant with concealing the financing of terrorism in violation of 18 U.S.C. § 2339C(c)(2)(A).

**2.  Statutory Minimum and Maximum Penalties**

The defendant understands that the counts to which he is pleading guilty carry no mandatory minimum and the following maximum statutory penalties:

| Count One | Term of imprisonment: | Up to ten (10) years in prison |
|---|---|---|
| | Fine: | Up to $250,000 |
| | Term of supervised release: | Up to life |
| Count Two | Term of imprisonment: | Up to ten (10) years in prison |
| | Fine: | Up to $250,000 |
| | Term of supervised release: | Up to life |

The defendant further understands that the Court has the discretion to run the sentences of imprisonment on the counts of conviction consecutively to each other.

**3.  Agreement to Dismiss Other Charges**

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will move to dismiss any remaining charges in the indictment against the defendant in this case, as well as

the charges against the defendant in Eastern District of Michigan Case

No. 23-30352, specifically, the alleged violations of 18 U.S.C. §

1028(a)(7) and 18 U.S.C. § 1029(a)(2) (Possession of means of

identification in connection with another felony offense, including wire

fraud), 18 U.S.C. § 1029(a)(3) (Use and trafficking of access devices), 18

U.S.C. § 1030(a)(2) (Possession of 15 or more access devices), 18 U.S.C.

§1030(b) (Illegally accessing a protected computer), and 18 U.S.C §1343

(Conspiracy to commit computer fraud; wire fraud).

4.    **Agreement Not to Bring Additional Charges**

If the Court accepts this agreement and imposes sentence

consistent with its terms, the United States Attorney's Office for the

Eastern District of Michigan will not bring additional charges against

the defendant for conduct related to his actions in the indictment or

information in this case or the complaint in Eastern District of

Michigan Case No. 23-30352.

5.    **Elements of the Count of Conviction**

The elements of Count One and Count Two are:

1)    The defendant knew that he was providing, or
intended to provide, support or resources to a
designated foreign terrorist organization, namely
the Islamic State of Iraq and al-Sham (ISIS);

2)  The defendant knew that ISIS was a designated
    terrorist organization, that ISIS has engaged or
    engages in terrorist activity, or that ISIS has
    engaged or engages in terrorism;

3)  The defendant knowingly or intentionally
    provided the support or resources to ISIS in
    violation of 18 U.S.C. § 2339B (attempted
    material support to a designated foreign terrorist
    organization, namely ISIS);

4)  The defendant knowingly concealed or disguised
    the nature, location, or control of the support or
    resources, or any funds or proceeds of such funds;
    and

5)  The defendant did all of the above while the
    defendant was in the United States.

**6.  Factual Basis**

The parties agree that the following facts are true, accurately

describe the defendant's role in the offense, and provide a sufficient

factual basis for his guilty plea:

In 2004, the U.S. Secretary of State (the Secretary) designated al

Qaeda in Iraq (AQI), then known as Jam'at al Tawhid wa'al-Jihad, as a

Foreign Terrorist Organization (FTO) under section 219 of the

Immigration and Nationality Act (INA) and as a Specially Designated

Global Terrorist under section 1(b) of Executive Order 13224. In 2015,

the Secretary added the following aliases to the FTO listing: Islamic

State, ISIL, and ISIS (the Islamic State of Iraq and al-Sham). To date, ISIS remains a designated FTO.

At all relevant times to the information, including from at least February 2023 to May 2024, the defendant was present in the United States. During this same period, the defendant knew that ISIS engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act) and that ISIS has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989). The defendant knew these facts from, among other things, his review of ISIS materials and videos, and other online sources.

In early February 2023, the defendant initiated a conversation over Whatsapp with a Confidential Human Source (CHS) who the defendant believed was an ISIS member who facilitated travel for people seeking to join ISIS. In these initial communications, the defendant told the CHS that "I want to help you," and "I want to do hijrah (meaning traveling for the purpose of joining ISIS). . . I wish to bring [my] skill to the ummah (meaning the Caliphate that ISIS intends to recreate)."

Over the next several months, the defendant had additional discussions with the CHS about the defendant's desire to travel to join ISIS and his hope of working in a leadership role within ISIS. The defendant said he wanted to "help grow the state," and that he was "willing to do whatever needs will fit our mission." During this time period, The defendant engaged in numerous conversations with the CHS in which The defendant offered the CHS ideas, information, documents, and handwritten notes on a variety of topics that the defendant believed would be beneficial to ISIS. For example, the defendant provided the CHS information on how ISIS could use drones and remote-controlled cars to deliver explosives, how ISIS could organize intelligence operations, how ISIS could use covert shipping networks, and how ISIS could improve air defense systems. The defendant also sent the CHS a recorded video of himself pledging allegiance to ISIS's leader.

The defendant intended to provide material support and resources to ISIS by, among other things, providing money donations to ISIS. The defendant knowingly concealed or disguised the nature, location, or control of the support or resources, and any funds that he provided to

ISIS. To this end, the defendant committed overt acts, each of which was a substantial step towards committing the crime of providing material support or resources to ISIS, including two Bitcoin donations, set out below.

### Count One act

On March 16, 2023, the defendant donated 0.0126563 Bitcoin, or approximately $350 to the CHS. The defendant made this donation knowing and intending that the money would be used to help support ISIS. Specifically, the defendant donated this money to help pay for the travel of two other people who the defendant believed were travelling to join ISIS. Upon sending the first donation, the defendant told the CHS that "I sent enough for both and the fees and its [sic] no problem as I said we are all brothers. Do what I can if I have the ability to. No problem."

### Count Two act

On May 4, 2023, the defendant donated 0.01870412 Bitcoin, or approximately $530 to the CHS. The defendant made this donation knowing and intending that the money would be used to help support ISIS. Specifically, the defendant donated this money to either help pay

for the travel of three other people who the defendant believed were travelling to join ISIS, or to help fund an individual who the defendant believed would commit an act of violence in support of ISIS. The CHS later informed the defendant that the ISIS "brother" he sponsored with his money utilized certain techniques to discover a spy and that the spy's entire family suffered for the spy's actions. The defendant responded "Good." When the CHS stated that they sent these people to "Jahannam" (which means hell), the defendant again replied with "Good."

The defendant knowingly and intentionally made his two donations (on March 16, 2023 and May 4, 2023) to ISIS using an app on his cellphone that would conceal the nature and source of his Bitcoin donations. Specifically, the defendant used an app called "Exodus" for this purpose because the app encrypts private keys and transaction data for the user's eyes only and conceals details of the transactions. The defendant also used the Mullvad Virtual Private Network (VPN) service, which is a privacy focused VPN service with a high degree of anonymity for its users with a particular focus on protecting users from

government investigation, in an effort to conceal the nature of source of his ISIS donations.

7. **Advice of Rights**

The defendant has read the information, has discussed the charges and possible defenses with his attorney, and understands the crimes charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A.   The right to plead not guilty and to persist in that plea;

B.   The right to a speedy and public trial by jury;

C.   The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D.   The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E.   The right to confront and cross-examine adverse witnesses at trial;

F.   The right to testify or not to testify at trial, whichever the defendant chooses;

G.    If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

H.    The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

I.    The right to compel the attendance of witnesses at trial.

**8.    Collateral Consequences of Conviction**

The defendant understands that his conviction here may carry additional consequences under federal or state law. The defendant understands that, if he is not a United States citizen, his conviction here may require him to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of his conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of

the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his conviction.

### 9. Defendant's Guideline Range

#### A. Court's Determination

The Court will determine the defendant's guideline range at sentencing.

#### B. Acceptance of Responsibility

The parties agree under Federal Rule of Criminal Procedure 11(c)(1)(C) that the defendant shall receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the parties agree that the defendant shall receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his

guilt on the offense(s) to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the parties will be released from their obligations under this paragraph, and the defendant shall not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and instead shall receive an enhancement for obstruction of justice under USSG § 3C1.1.

C.   **Other Guideline Recommendations**

The parties also agree under Federal Rule of Criminal Procedure 11(c)(1)(C) that the following guideline provisions apply:

| 2X3.1 | Base offense level | 20 (6 levels lower than the offense level for the underlying offense, which is 26 under 2M5.3) |
| 2M5.3(b)(1) | Offense involved the provision of funds with the intent, knowledge, or reason to believe they are to be used to commit or assist in the commission of a violent act | +2 (Apply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant, 2X3.1. cmt. n. 1) |

| 3A1.4(a) and (b) | Terrorism enhancement | +12 |
|---|---|---|
| | Criminal history category | VI |

### D.   Factual Stipulations for Sentencing Purposes

The parties have no additional factual agreements for sentencing purposes.

### E.   Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 9.B, 9.C, or 9.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F.   Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' agreement or factual stipulations in paragraphs 9.B, 9.C, or 9.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

10. **Imposition of Sentence**

   A. **Court's Obligation**

   The defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

   B. **Imprisonment**

      1. **Agreement**

   Under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree a sentence of 108 months is the appropriate disposition of this case.

      2. **Limited Right to Withdraw**

   If the Court rejects the agreement by deciding to impose a sentence of imprisonment higher than permitted by paragraph 9.B.1, the defendant will be permitted to withdraw his guilty plea. That is the only reason the defendant may withdraw his guilty plea. If the defendant decides not to withdraw his guilty plea in those circumstances, the defendant agrees that the Court may impose a

sentence higher than permitted by paragraph 10.B.1 and that all other provisions in this agreement will remain in effect.

If the Court rejects the plea agreement by deciding to impose a sentence of imprisonment lower than permitted by paragraph 10.B.1, or by rejecting or purporting to reject any other term or terms of this agreement, the government will be permitted to withdraw from this agreement.

### C.   Supervised Release

#### 1.   Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree that the Court shall impose a 10-year term of supervised release.

#### 2.   Revocation

The defendant understands that the parties' agreement concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 10.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

### D.   Fines

The parties have no agreement as to a fine.

**E.    Restitution**

There is no recommendation or agreement on restitution.

**F.    Special Assessment**

The defendant understands that he will be required to pay a special assessment of $200, due immediately upon sentencing.

## 11.    Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. The defendant also waives any right he may have to appeal his sentence on any grounds unless his sentence of imprisonment exceeds 120 months in prison.

## 12.    Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to

challenge his conviction or sentence on any grounds under 28 U.S.C.

§ 2255 (except for properly raised ineffective assistance of counsel or

prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241,

or Federal Rule of Civil Procedure 59 or 60.

## 13.   Remedies for Withdrawal, Breach, Rejection, or Vacatur

If the defendant is allowed to withdraw his guilty plea or breaches

this agreement, or if the Court rejects this agreement, or if the

defendant's conviction or sentence under this agreement is vacated, the

government may reinstate any charges against the defendant that were

dismissed as part of this agreement and may file additional charges

against the defendant relating, directly or indirectly, to any of the

conduct underlying the defendant's guilty plea or any relevant conduct.

If the defendant has been permitted to plead guilty to a lesser-included

offense, the government may also reinstate any charges or file any

additional charges against the defendant for the greater offense, and

the defendant waives his double-jeopardy rights with respect to the

greater offense. If the government reinstates any charges or files any

additional charges as permitted by this paragraph, the defendant

waives his right to challenge those charges on the ground that they

were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## 14.   Use of Withdrawn Guilty Plea

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

## 15.   Parties to Plea Agreement

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

## 16.   Scope of Plea Agreement

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant

at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

17.   **Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00 PM on May 30, 2025. The government may withdraw from this agreement at any time before the defendant pleads guilty.

Jerome F. Gorgon Jr.
United States Attorney

_____
Michael C. Martin, Criminal
Division Chief,
Assistant United States Attorney

_____
Douglas Salzenstein,
National Security Unit Chief,
Assistant United States Attorney

Dated:  6/9/25

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions

answered by his attorney and is satisfied with his attorney's advice and

representation.

Todd Shanker
Attorney for Defendant

Jibreel Pratt
Defendant

Dated:  6 / 10 / 2025